## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| HENRY JONES, # M-14317, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-cv-068-NJR |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| C/O MIRACLE, LT. CLARK, | ) | |
| and VIPIN SHAH, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, currently incarcerated at Pontiac Correctional Center ("Pontiac"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's claims arose while he was previously confined at Pinckneyville Correctional Center ("Pinckneyville"). He asserts that Defendants were deliberately indifferent to his serious medical condition. The complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d

1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that Plaintiff's claims survive threshold review under § 1915A.

**<u>The Complaint</u>**

Plaintiff was transferred to Pinckneyville on January 21, 2015. He was transported there on a bus from Western Illinois Correctional Center. Plaintiff's leg was in an awkward position during this long bus ride, and his knee swelled up to the size of a baseball by the time he arrived. Plaintiff was taken to a shower area at Pinckneyville along with other inmates from the bus. He asked several officials for help to get medical attention for his knee, but was told that nothing could be done (Doc. 1, p. 5).

After some length of time, Defendant Miracle brought a meal to the inmates who were still being held in the shower. Plaintiff showed him his swollen knee and asked for help because he could not continue standing in that condition. Defendant Miracle would not assist Plaintiff. An unidentified nurse similarly told Plaintiff that nothing could be done about the swollen knee.

After Plaintiff had remained on his feet in the shower area for five hours, he was taken to a cell. Plaintiff told the escorting officer that he had a bottom bunk permit because of his bad knee.[1] His new cellmate also had a permit for a bottom bunk (Doc. 1, pp. 6-7). Defendant Clark was called in to resolve the conflict; after checking on the matter, he announced that only Plaintiff's cellmate had a low bunk permit. Plaintiff protested, showing Defendant Clark his swollen knee, and stating that the permit must be in his medical file. Defendant Clark threatened Plaintiff with segregation if he did not take the top bunk, and he also promised Plaintiff that he would be compensated for being placed in the upper bunk.

Plaintiff remained assigned to the top bunk for a month, until February 22, 2015. The climb up and down from the bunk caused him excruciating pain, and he never received the promised compensation. During this time, Plaintiff sent in multiple sick call requests to Defendant Dr. Shah, explaining his knee injury and the need for a lower bunk (Doc. 1, p. 8). A nurse eventually referred Plaintiff to see Defendant Shah.

Defendant Shah prescribed physical therapy for Plaintiff's knee, and he had this therapy from April 22 through July 2, 2015. The physical therapy was ineffective. Further, the therapy made Plaintiff's knee condition more painful–and the prescribed pain medicine failed to relieve this discomfort. Defendant Shah has never diagnosed the source of Plaintiff's knee symptoms, and he has denied Plaintiff's requests for an MRI or CAT scan to diagnose the injury so it could

---

[1] This allegation indicates that Plaintiff had suffered a previous injury to his knee which led to the issuance of the low bunk permit, but Plaintiff does not discuss that earlier injury.

be effectively treated. Defendant Shah finally informed Plaintiff that he could do nothing further to treat Plaintiff's knee, and refused to provide him with any more medical attention (Doc. 1, p. 9).

As of the date Plaintiff filed his complaint, more than a year had gone by since he first sought medical care from the Defendants. Plaintiff's knee is still swollen and severely painful. The knee often buckles and shifts abnormally from side to side. These symptoms interfere with Plaintiff's daily activities. He thinks the symptoms are caused by a "torn ACL ligament" (Doc. 1, p. 9).

Plaintiff further asserts that Defendant Wexford Health Sources, Inc., ("Wexford") maintains a "cost-cutting policy," under which they do not have adequate equipment (*e.g.* an MRI or CAT scan machine) to diagnose conditions such as his knee injury (Doc. 1, p. 10). Plaintiff seeks unspecified permanent injunctive relief, as well as compensatory and punitive damages (Doc. 1, p. 12).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment deliberate indifference claim against Defendant Miracle, for failing to assist Plaintiff to get medical attention or other relief for his swollen knee during the time Plaintiff was forced to stand for hours in the shower on January 21, 2015;

> **Count 2:** Eighth Amendment deliberate indifference claim against Defendant

Clark, for forcing Plaintiff to sleep in the top bunk despite Plaintiff's visible knee injury and low bunk permit;

**Count 3:** Eighth Amendment deliberate indifference claim against Defendant Shah, for delaying assessment and treatment of Plaintiff's knee, failing to order tests to diagnose the cause of Plaintiff's swelling and pain, and discontinuing treatment for Plaintiff's painful condition;

**Count 4:** Eighth Amendment deliberate indifference claim against Defendant Wexford Health Sources, for implementing a cost-cutting policy that prevented Plaintiff from obtaining adequate testing and diagnosis of his knee problem.

At this stage, each of these claims survives scrutiny under § 1915A and shall proceed for further consideration.

**Deliberate Indifference to a Serious Medical Need**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. A medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015).

The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of

serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence, or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff describes a severely and obviously swollen knee that appeared to require medical attention. The complaint thus satisfies the objective component of an Eighth Amendment claim. The remaining question is whether the various Defendants acted or failed to act with deliberate indifference to a known risk of serious harm to Plaintiff from this condition.

**Count 1 – Defendant Miracle**

Defendant Miracle is a correctional officer, who by all indications is a layperson, not a medical provider. Plaintiff showed Defendant Miracle the swollen condition of his knee and pointed out that the prolonged standing was aggravating the knee. Although Plaintiff asked Defendant Miracle to help him get medical attention, Defendant Miracle did nothing. At this stage of the case, Plaintiff has stated a deliberate indifference claim against Defendant Miracle that merits further review.

**Count 2 – Defendant Clark**

Similarly, Plaintiff showed Defendant Clark his swollen knee and alerted him to the fact that Plaintiff had earlier been issued a medical permit for a low bunk because his knee had been injured. Defendant Clark conducted some inquiry into the matter of the competing low bunk permits, but apparently made no attempt to find a low bunk for Plaintiff or otherwise accommodate his injury. Instead, he threatened Plaintiff with discipline if he did not accept the top bunk in the cell. Based on these facts, the deliberate indifference claim in Count 2 against Defendant Clark shall also proceed in this action.

**Count 3 – Defendant Shah**

According to Plaintiff, he sent multiple written requests to Defendant Shah, asking for a low bunk permit on account of his injured knee. Defendant Shah apparently did not respond in a timely fashion, as Plaintiff says he remained in the top bunk for a month. When Plaintiff did see Defendant Shah, the doctor prescribed a course of physical therapy, which Plaintiff followed for about two and a half months. Defendant Shah did not provide Plaintiff with effective pain relieving medication. After turning down Plaintiff's requests for diagnostic testing, Defendant Shah simply gave up and refused to provide Plaintiff with any more treatment.

At this stage, Defendant Shah's delay in responding to Plaintiff's request for a low bunk accommodation and treatment for his knee, as well as Defendant Shah's refusal to attempt diagnostic testing or further treatment after the physical therapy failed to improve Plaintiff's condition, indicate possible deliberate indifference to the knee injury. These portions of the claim shall receive further review in Count 3.

However, Plaintiff's complaint that the physical therapy was ineffective is not sufficient, in and of itself, to support a deliberate indifference claim. The mere fact that a doctor has prescribed a treatment that proved ineffective does not state a claim. *See Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008). The same may be said for pain medication that does not provide relief–but, if Plaintiff informed Defendant Shah that his pain medicine was ineffective and Defendant Shah made no further attempt to address the pain, such inaction could amount to a constitutional violation. Additional factual development will be necessary to further analyze this portion of the claim. Count 3 shall proceed with these qualifications.

**Count 4 – Defendant Wexford Health Sources, Inc.**

Defendant Wexford Health Sources ("Wexford") is a corporation that employs Defendant

Shah and provides medical care at the prison, but it cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).

In this case, Plaintiff has alleged that Defendant Wexford's "cost-cutting policy" to limit the availability of equipment for diagnostic testing led to Defendant Shah's refusal to provide Plaintiff with tests to diagnose the cause of his knee problems. At this stage, taking Plaintiff's statements as true, he may proceed with the claim against Defendant Wexford in **Count 4**.

A final note is in order regarding Plaintiff's request for permanent injunctive relief. All of the events described in the complaint occurred at Pinckneyville, while Plaintiff was under the care of officials at that prison. Since then, however, Plaintiff has been transferred and is now housed at Pontiac, where the Pinckneyville Defendants are presumably no longer responsible for his medical care. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995). Only if Plaintiff can show a realistic possibility that he would again be incarcerated at Pinckneyville under the conditions described in the complaint, would it be proper for the Court to consider injunctive relief against the Pinckneyville Defendants (Shah, Miracle, and Clark). *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)). If Plaintiff believes that officials at

his current prison have been deliberately indifferent to his medical condition, that matter is outside the scope of this action.

**Pending Motion**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Wilkerson for further consideration.

The motion for service of process at government expense (Doc. 4) is **GRANTED.** Service on the Defendants shall be ordered below.

Plaintiff's motion for status (Doc. 11) is **GRANTED**, in that the status of the case is reflected in this order.

**Disposition**

The Clerk of Court shall prepare for Defendants **WEXFORD HEALTH SOURCES, INC., MIRACLE, CLARK,** and **SHAH**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address

shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  March 16, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**